Barry C. Toone (Bar No. 018664)
Jill S. Goldsmith (Bar No. 011500)
Iman R. Soliman (Bar No. 021333)
**BOWMAN AND BROOKE LLP**
Suite 1600, Phoenix Plaza
2901 North Central Avenue
Phoenix, Arizona 85012-2761
(602) 643-2300
barry.toone@phx.bowmanandbrooke.com
jill.goldsmith@phx.bowmanandbrooke.com
iman.soliman@phx.bowmanandbrooke.com

Attorneys for Defendant Ford Motor Company

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Karen Elliott, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Ford Motor Company, a Delaware Corporation, TRW Automotive Holdings Corp., a Delaware Corporation; and Autoliv Inc., a foreign corporation,<br><br>Defendants. | No. CV 2004 0902 PHX SRB<br><br>**FORD MOTOR COMPANY'S MOTION TO EXCLUDE OPINIONS OF GEOFFREY MAHON UNDER <u>DAUBERT</u>**<br><br>**(Oral Argument Requested)**<br><br>(Honorable Susan R. Bolton) |

Defendant Ford Motor Company ("Ford") hereby moves this Court to grant its motion to exclude opinions of Geoffrey Mahon because: 1) Mahon's opinions are not based on any scientific methods and principles; and 2) Mahon has done no testing. Therefore, Mahon's opinions will not assist the trier of fact. This Motion is supported by the accompanying Memorandum of Points and Authorities which is incorporated by reference herein.

DATED this 31st day of July, 2006.

BOWMAN AND BROOKE LLP

By: s/ Iman R. Soliman

Barry C. Toone
Jill S. Goldsmith
Iman R. Soliman
Suite 1600, Phoenix Plaza
2901 North Central Avenue
Phoenix, Arizona 85012-2761
Attorneys for Defendant
Ford Motor Company

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

### A. ACCIDENT FACTS

This is an action arising from a May 21, 2002 crash that occurred while plaintiff Karen Elliott was driving a 1996 Ford Contour on her way to work on Bethany Home Road in Phoenix. Plaintiff failed to slow down in a school zone and crashed into the back of a 2001 Blazer.[1] See Arizona Traffic Accident Report, attached as Exhibit A. In the crash, the frontal airbags deployed in the Contour. Plaintiff sustained injuries which she alleges came from the deployment of the driver's airbag.

### B. PLAINTIFF'S CLAIMS

Plaintiff sued Ford Motor Company for her injuries alleging four causes of action: strict liability, negligence, breach of warranty, and punitive damages. See Complaint. To support her claims, plaintiff disclosed Geoffrey Mahon, as the sole expert who, if permitted, will testify that the airbag sensing system is defective. The only criticism that Mahon has is that the addition of the dwell enhancer to the airbag sensing system in the Contour renders it defective in design because it allowed for an airbag deployment in an accident where the crash severity was below the "no-fire" threshold. See Geoffrey Mahon's Deposition Transcript, p. 16:7-11, attached as Exhibit B. However, Mahon acknowledges that he is not critical of: 1) the placement of the sensors; 2) the sensor componentry; 3) the specifications for the fire and no-fire thresholds; 4) the sensor calibration; or 5) the aggressivity of the airbag. Exhibit B, pp. 111:20-25, 145:3-14, 148:12-16, and 134:11-15. Mahon admits that the sensors in the Contour met Ford's

---

[1] Plaintiff claims that she may have blacked out causing her vehicle to crash into the Blazer. The police officer cited plaintiff for failure to control vehicle speed to avoid collision. See Officer Glenn Larson's Deposition Transcript, p. 12:5-10, attached as Exhibit C.

specifications and that there is no evidence of a manufacturing claim. Exhibit B, pp. 95:25-96:5 and 167:25-168:6. Indeed, he admits that the sensors in the subject vehicle passed the tests at the time the vehicle was manufactured and that they would pass the tests today. Exhibit B, p. 96:9-21. Additionally, Mahon will not testify that the airbag deployed late. Exhibit B, p. 135:10-15. He also acknowledges the vehicle passed all of the applicable Federal Motor Vehicle Safety Standards including the airbag standard FMVSS 208. Exhibit B, pp. 151:13-24 and 152:17-23.

The parties agree that the airbag sensing system in the 1996 Contour is designed to deploy in certain frontal crashes. In simplistic terms, the sensing system is designed for a "non-airbag deployment" in an impact speed of 8 miles per hour or less. The airbag "may" deploy if the impact speed is greater than 8 miles per hour and below the 14 mile per hour "must" deploy threshold. In this case, Mahon is relying on plaintiff's accident reconstruction expert opinion of Mike Shepston that plaintiff rear ended the Blazer at an 8 mile per hour speed with a change in velocity (Delta-V) in the Contour of 5 miles per hour.[2] Exhibit B, p. 216:16-217:1. Mahon opines that the airbag should not have deployed in a crash with a 5 mile-per-hour Delta V. Mahon opines that the sole reason the airbag deployed when it should not have is because of the addition of the dwell enhancer. Exhibit B, pp. 16:7-11.

The dwell enhancer was added to the Contour and to other vehicles as part of the airbag sensing system because "it improves the overall reliability of the system. It enhances, or increases, the dwell time of the discriminating sensors in certain crash scenarios to assure that the signal to deploy is appropriately sent to the airbag module." See David Bauch's Report, attached as Exhibit D.

## II. MAHON'S OPINIONS ARE INADMISSIBLE BECAUSE THEY ARE UNRELIABLE UNDER DAUBERT

---

[2] Although none of plaintiff's experts conducted a crash test to determine plaintiff's speed at the time of impact, Ford conducted two crash tests of the same make and model vehicles involved in the subject crash. These crash tests demonstrate that the subject vehicle's impact speed was, at a minimum, in the "may-deploy" zone and therefore the airbag deployed as designed.

The Supreme Court decided in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), that Federal Rule of Evidence 702 mandates that trial judges act as gatekeepers to the introduction of scientific or otherwise specialized testimony to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id. at 588. In Daubert, the Supreme Court set out the relevant standard by which courts should determine whether to admit expert testimony into evidence. The Court held that the guiding factors in this determination are whether the expert testimony reflects "(1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." 509 U.S. at 592. The Court also set forth a checklist for trial courts to use in assessing the reliability of expert testimony. The specific factors explicated by the Court were:

(1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability;

(2) whether the technique or theory has been subject to peer review and publication;

(3) the known or potential rate of error of the technique or theory when applied;

(4) the existence and maintenance of standards and controls; and

(5) whether that technique or theory has been generally accepted in the scientific community.

Daubert, 509 U.S. at 593-594.

The Daubert rule requires this Court to focus its inquiry on the "principles and methodology underlying the expert's testimony, not on the conclusion." Kennedy v. Collagen Corp., 161 F.3d 1226, 1228 (9th Cir.1998). Such testimony must also be "based upon sufficient facts or data," be "the product of reliable principles and methods," and it must be shown that "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Civ. Pro. 702.

As the Supreme Court cautioned in Daubert, trial courts "must recognize that due to the difficulty in evaluating their testimony, expert witnesses have the potential to be both powerful and misleading." 509 U.S. at 595. Therefore, a trial judge, faced with a proffer of expert testimony, must conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001)(quoting Daubert, 509 U.S. at 595). The testimony may not be based or rely upon "unsupported speculation and subjective beliefs" as it would lack any indicia of reliability, and work against the objective of Rule 702 that the testimony assist the trier of fact in understanding the facts and issues in the case. Guidroz-Brault v. Missouri Pac. R. Co., 254 F.3d 825, 829 (9th Cir. 2001); see also Ruffin v. Shaw Indus., Inc., 149 F.3d 294, 297 (4th Cir. 1997). The proponent of the testimony has the burden of establishing by a preponderance of proof that the testimony is relevant, reliable, helpful, and not based upon speculation or unsupported opinion. Id.

### A. Mahon Has Done No Testing To Support His Opinions

The majority of circuits view testing as the most significant Daubert factor and have excluded testimony not supported by meaningful testing and evaluation. See, e.g., Bogosian v. Mercedes-Benz of North America, Inc., 104 F.3d 472 (1st Cir. 1997) (affirming exclusion of plaintiff's expert's theory for failing to properly conduct thorough testing and evaluation of his hypothesis); Watkins v. Telsmith Inc., 121 F.3d 984 (5th Cir. 1997) (excluding plaintiff's engineering expert who advocated an alternative design to a conveyor because he had failed to adequately test it); Cummins v. Lyle Industries, 93 F.3d 362, 369 (excluding plaintiff's engineering expert who advocated an alternative design for a trim press for his failure to adequately test his theories); Weisgram v. Marley Co., 169 F.3d 514 (8th Cir. 1999) (rejecting plaintiff's well-qualified metallurgy expert for failure to test his hypothesis).

Mahon's opinions should be excluded because he failed to employ any methodology, protocol, testing, analysis, or anything that is recognized by the relevant scientific community. <u>See</u>, <u>e.g.</u>, <u>Deimer v. Cincinnati Sub-Zero Products, Inc.</u>, 58 F.3d 341 (7th Cir. 1995) (affirming exclusion of expert on cause of accident because his opinions "were unsupported by any scientific method").

Mahon admitted that he has done no testing, computer modeling, or sled testing whatsoever to support his opinion that the addition of a dwell enhancer caused the airbag to deploy when it should not have deployed in this accident.[3] When asked about testing, Mahon testified to the following:

> Q. Just to get back to this, just to be clear, you did not do any testing to determine whether the air bag would not have deployed under the circumstances of this accident if there was no dwell enhancer, correct?
>
> . . .
>
> A. I did no testing . . .
>
> Q. Okay. Did you do any computer modeling of the air bag system or any of its component parts to determine whether the air bag would not have deployed under the circumstances of this accident if there was no dwell enhancer?
>
> . . .
>
> A. I may have in the 1994 time frame, but I don't remember.
>
> . . .
>
> Q. To be clear, you're not aware of any computer modeling that replicates the circumstances of this accident which would determine whether a – the absence of a dwell enhancer would cause the air bag not to deploy, correct?
>
> A. I think that's correct.

---

[3] In car to car vehicle crashes such as the subject crash, the dwell enhancer "does not affect whether or not the airbag will deploy." Exhibit D, David Bauch's Report.

> Q. Have you done any sled testing for this case or that Rodriguez case?
>
> A. You know, I don't own a sled, and I also answered that I haven't done any testing for this case.
>
> Q. Okay. I want to make sure that you understand that meant both crash tests and sled test.
>
> A. I thought that meant any kind of test because you didn't specify.
>
> Q. You haven't done any tests specifically to this – the circumstances of this accident or this case, correct?
>
> A. That's correct.

Exhibit A, p. 38:12-41:12. Mahon also admitted that there are no tests out there done by anyone else that support his theory in this case. Exhibit A, p. 62:5-15. Indeed, Mahon testified to the following:

> Q. So, tell me and identify the test that proves that had there been no dwell enhancer in this air bag system under the circumstances of this accident, that the air bag would not have deployed. Identify it however you want to do it, test number or type, et cetera.
>
> A. That question was asked and answered, and I said there was no test that specifically covered this event, and that was my previous testimony.

Exhibit B, p. 62:5-15. Therefore, Mahon's opinion is nothing more than untested speculative opinion.

> **B.  Mahon's Theory Has Not Been Subject To Peer Review And Publication**

Mahon's theory or techniques have not been peer reviewed. Mahon presented no evidence that his theories about the dwell enhancer are generally accepted in the scientific community. Indeed, Mahon has not prepared any papers to be peer reviewed. He could not identify any publications to support his opinions. When asked about any papers, Mahon testified:

> Q. Is there literature that you intend to rely on to support your opinions in this case?
>
> A. I don't believe there is literature that I intend to [rely on] to support my opinions in this case.
>
> . . .
>
> Q. Do you have any documentation that proves that had the dwell enhancer not been part of the air bag system, this air bag would not have deployed in the accident Ms. Elliott was involved in?
>
> A. I don't believe any such documentation exists since I already testified that no one did any testing that duplicates this accident, and I presume that would be the only documentation you would accept as "proof," in quotes.

Exhibit B, pp. 9:16-21 and 41:15-25. Indeed, Mahon admitted that he is "not aware of any such literature" that supports his opinion that the addition of a dwell enhancer renders the airbag system defective and unreasonably dangerous. Exhibit B, pp. 88:23-89:4. Moreover, Mahon admitted that, although he could have, he did not file a petition with the National Highway Transportation Safety Administration ("NHTSA"), the agency that oversees automobile safety, regarding his concerns in regards to the airbag system in the 1996 Contour. Exhibit B, pp. 162:24-163:3 and 163:24-164:8. Indeed, Mahon has never petitioned NHTSA to force Ford to remove the dwell enhancer on any of its airbag systems. Exhibit B, p. 164:9-13. Mahon did not produce any evidence whatsoever that NHTSA had any concerns regarding the addition of a dwell enhancer to the airbag system. Exhibit B, pp. 164:14-166:14.

Factors three and four of <u>Daubert's</u> checklist regarding the rate of error and the existence and maintenance of standards and control are not relevant because Mahon used no methodology or science to relate to this case.

. . .

. . .

### C. Mahon Relies On Himself And No One Else For His Opinions

An expert's own "self proclaimed accuracy" is insufficient to support his testimony. General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). Accordingly, the expert's methodology should tie his opinions to the evidence by a specific train of scientific evidence pointing to a defect. Indeed, Rule 702 was amended to require that an expert's opinions be based on "sufficient facts or data." Fed. R. Evid. 702(1). This amendment states the obvious – baseless and unsupported opinions are not helpful to the trier of fact and are therefore inadmissible. General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) ("nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert."). Mahon's testimony fails all of the criteria for admissibility. Mahon's proof that the Contour's airbag system would not have deployed without the addition of the dwell enhancer in this crash, is himself and only himself. Indeed, Mahon testified:

> Q. . . . Do you have any proof that the – had this 1996 Ford Contour air bag system not had a dwell enhancer, that the air bag would not have deployed under the circumstances of this accident?
>
> A. Well, my industry -- . . . my industry experience and background of designing sensor systems allows me to offer the opinion that beyond or that to a reasonable engineering of certainty, it would not have . . . .

Exhibit B, p. 42:6-18. Indeed, Mahon claims that his own personal experience in the industry and background allows him to offer such opinion—even though no one else supports it.[4] Exhibit B, p. 42:6-18. This is the type of ipse dixit that courts preclude. Mahon's opinions are simply based on subjective beliefs and

---

[4] Mahon claims that one person, Chris Caruso, an employee of Delco Electronics, **may** have said back in the 1993 year frame when he worked at Delphi, although he did not do any testing, that the addition of the dwell enhancer is a bad idea. Exhibit B, pp. 90:19-91:15 and 92:17-21. Mahon testified that he is under the "impression" that Dr. Ralph Hensler would agree with him that the addition of the dwell enhancer is a bad idea. Exhibit B, pp. 170:21-171:8 and 172:3-5. Although Mahon has not spoken to Dr. Castelli or Dr. Breed regarding the dwell enhancer, he **presumes** that they would agree that the dwell enhancer is a bad idea. Exhibit B, p. 172:16-22. Mahon acknowledges that a "bad idea" is different than "defective and unreasonably dangerous." Exhibit B, p. 90:8-18.

unsupported speculation and therefore unreliable. Mahon is not able to identify one person who stated, formally or informally, that the addition of a dwell enhancer renders the airbag system defective and unreasonably dangerous. Exhibit B, pp. 89:13-90:18.

Even if Mahon was qualified in the area of airbag sensing systems, his opinions in this case are mere speculation and unreliable. Plaintiff failed to show that Mahon used a reliable methodology (or any methodology). Plaintiff has no evidence that the airbag in the 1996 Ford Contour would not have deployed but for the addition of the dwell enhancer. Mahon has not done a thorough testing or any testing on a 1996 Contour, or any vehicle with similar sensing design, to demonstrate that the airbag would not have deployed under the circumstances of this crash if there was no dwell enhancer in the system. Exhibit B, p. 36:3-14. Because Mahon's opinions are unreliable and mere speculation, Mahon should be excluded from giving opinions in this matter. Without competent evidence rendering a product unreasonably dangerous, summary judgment is appropriate.

## III. CONCLUSION

For the foregoing reasons, Ford requests this Court to grant its Motion to Exclude Geoffrey Mahon under Daubert.

DATED this 31st day of July, 2006.

BOWMAN AND BROOKE LLP

By: s/ Iman R. Soliman
    Barry C. Toone
    Jill S. Goldsmith
    Iman R. Soliman
    Suite 1600, Phoenix Plaza
    2901 North Central Avenue
    Phoenix, Arizona 85012-2761
    Attorneys for Defendant
    Ford Motor Company

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that on the 31st day of July, 2006 I caused the attached document |
| 3 | to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing |
| 4 | and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant: |

G. Lynn Shumway
Law Offices of G. Lynn Shumway
6909 E. Greenway, Ste. 200
Scottsdale, Arizona 85254
Attorneys for Plaintiff

　　　　　　　　　　　　　　　　　　　　s/ Kelly Brubaker