Barry C. Toone (Bar No. 018664)
Jill S. Goldsmith (Bar No. 011500)
Iman R. Soliman (Bar No. 021333)
**BOWMAN AND BROOKE LLP**
Suite 1600, Phoenix Plaza
2901 North Central Avenue
Phoenix, Arizona 85012-2761
(602) 643-2300
barry.toone@phx.bowmanandbrooke.com
jill.goldsmith@phx.bowmanandbrooke.com
iman.soliman@phx.bowmanandbrooke.com

Attorneys for Defendant Ford Motor Company

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Karen Elliott, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>Ford Motor Company, a Delaware Corporation, TRW Automotive Holdings Corp., a Delaware Corporation; and Autoliv Inc., a foreign corporation,<br><br>    Defendants. | No. CV 2004 0902 PHX SRB<br><br>**FORD'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUPPLEMENT TO PLAINTIFF'S RESPONSE TO FORD'S MOTION TO EXCLUDE GEOFFREY MAHON'S OPINIONS UNDER DAUBERT**<br><br>AND<br><br>**FORD'S SUPPLEMENT TO ITS REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE GEOFFREY MAHON'S OPINIONS UNDER DAUBERT**<br><br>(Honorable Susan R. Bolton) |

Plaintiff's Motion For Leave to File A Supplement to Plaintiff's Response to Ford's Motion to Exclude Geoffrey Mahon's Opinions Under Daubert should be denied because plaintiff refused to extend the deadline to file motions until after discovery was complete and should not now benefit in the form of a supplemental brief. In the

C:\Documents and Settings\kbrubake\Local Settings\Temp\tmp398\PHX-#311122-v1-ELLIOTT__Ford's_resp_to_Pf's_Motion_for_Leave_to_file_Suppl_to_Pf's_resp_to_Ford's_Motion_to_Exclud.TMP

1

alternative, Ford asks this Court to grant its motion to exclude G. Mahon's opinions under Daubert because:

1. Plaintiff fails to discuss or identify anyone in the relevant scientific community, any literature, or any tests that supports Mr. Mahon's opinion that the dwell enhancer is a design defect;

2. Mr. Mahon's calculation of "average g's" is untimely disclosed, contrary to his prior sworn testimony and therefore not admissible, and does not prove that the dwell enhancer is defective and unreasonably dangerous and the cause of the airbag deploying;

3. Mr. Mahon's calculation, even if considered, is a mere "estimator" at best;

4. Plaintiff's reliance on Ford's expert's testimony does not shore up the plaintiff's failure to prove a defect with reliable scientific evidence or testimony.

5. Plaintiff's alternative designs and new defect theories are untimely disclosed and contrary to prior sworn testimony and therefore not admissible.

Indeed, Mr. Mahon has not come forth with an affidavit supporting the claim that the airbag is defective because it does not have higher thresholds for firing an airbag, dual threshold or dual stage airbags. These are simply plaintiff's counsel's arguments that are not supported by evidence.

If this Court allows plaintiff's counsel's last minute brainstorms on notions such as dual threshold airbags, dual stage airbags, and increased firing thresholds to become claims of defect even though plaintiff's expert has not rendered opinions on these topics, Ford requests the right to develop complete defenses to these new claims.

I. **PLAINTIFF'S REQUEST TO SUPPLEMENT SHOULD BE DENIED BECAUSE PLAINTIFF REFUSED TO CONTINUE THE DEADLINE TO FILE DAUBERT MOTIONS**

C:\Documents and Settings\kbrubake\Local Settings\Temp\tmp398\PHX-#311122-v1-ELLIOTT__Ford's_resp_to_Pf's_Motion_for_Leave_to_file_Suppl_to_Pf's_resp_to_Ford's_Motion_to_Exclud.TMP

2

The parties agreed to extend some of the deadlines including the discovery cut off deadline to September 28, 2006. During the parties' discussions, Ford's counsel requested that the <u>Daubert</u> and dispositive motions deadline be moved until after the discovery cut off so that the parties have an opportunity to complete all of the depositions and discovery prior to filing any of the motions. Plaintiff's counsel refused to move the deadline. This is unfair game playing. Plaintiff was given an opportunity to move the deadline but plaintiff refused. Therefore, plaintiff's motion to supplement should be denied.

## II. MR. MAHON'S NEW AND UNTIMELY OPINIONS ARE NOT SUPPORTED BY FORD'S EXPERT, GERRY CORWIN

Plaintiff cannot avoid summary judgment by Mr. Mahon's reliance on new and untimely mathematical calculation that he did not rely on for his opinions when he testified under oath. Moreover, this calculation is contrary to Mahon's prior sworn testimony and is therefore not admissible. Even if the Court considered this calculation, plaintiff fails to prove how this calculation, that is a mere estimator at best, is connected to Mahon's opinions in this matter and therefore, Mahon's opinions fail to meet the <u>Daubert</u> challenge.

During Mr. Mahon's deposition he testified that the only defect in this crash is the addition of the dwell enhancer to the Contour's sensor system. Mr. Mahon also testified to all of the bases of his opinion, none of which included the average g's. Moreover, there is nothing in Mr. Mahon's report regarding "average g" calculations. Accordingly, Mr. Mahon's newly invented basis to assist plaintiff in avoiding a <u>Daubert</u> challenge should be rejected because it was not the bases for his opinions when he rendered his report and testified under oath in this case. In essence, because it did not form the basis for any opinions when testifying under oath, relying on it now is contrary to the prior sworn testimony. <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266-67 (9th Cir.

C:\Documents and Settings\kbrubake\Local Settings\Temp\tmp398\PHX-#311122-v1-ELLIOTT__Ford's_resp_to_Pf's_Motion_for_Leave_to_file_Suppl_to_Pf's_resp_to_Ford's_Motion_to_Exclud.TMP

3

1991) (A party cannot create a material issue of fact on a motion for summary judgment by offering an affidavit that contradicts the affiant's prior testimony); <u>Foster v. Arcata Assoc., Inc.</u>, 772 F.2d 1453, 1462 (9th Cir. 1985)(Appellant cannot "create his own issue of fact by an affidavit contradicting his prior deposition testimony").  Therefore, Mr. Mahon's "average g's" calculation is not admissible.

Plaintiff misstates Mr. Corwin's testimony in order to attempt to lend support to Mr. Mahon's testimony regarding "average g's."  Mr. Corwin did not validate or corroborate any methods used by Geoffrey Mahon.  Mr. Corwin testified:

> Q. Have you reviewed the method used by Geoff Mahon to compare reconstruction evidence from either side to 8 mile an hour barrier crashes?
>
> A. I reviewed his – if you are talking the average G calculation?
>
> Q. That's one of the things I am asking about.  Have you reviewed that material?
>
> A. I reviewed that, yes.
>
> Q. Do you have opinion on that subject?
> . . .
> A. Yes.  I have a couple of opinion on it.  The first one is that I have discussed in the past and just recently with Russ Brantman the average G's calculation that Mr. Mahon had done.  Mr. Mahon is attempting to quantify a vehicle to vehicle crash test to an 8 mile an hour barrier crash test and using his method, you would get an estimate of the G's.  It is different if you were to apply a known crash test like a pole crash test where you go from time zero to get the vehicle to come to a stop.  You are basically going time down to zero velocity and you are comparing that let's say in a pole test to an 8 mile an hour barrier crash.  That is a little bit more accurate when you are looking at the numbers.
> . . .

C:\Documents and Settings\kbrubake\Local Settings\Temp\tmp398\PHX-#311122-v1-ELLIOTT__Ford's_resp_to_Pf's_Motion_for_Leave_to_file_Suppl_to_Pf's_resp_to_Ford's_Motion_to_Exclud.TMP

4

Q. So you are saying Geoff Mahon's method is a way to estimate, but there are ways to do it even more accurately?

A. yes.

Q. Now, your conversation with Russ Brantman, I assume in that conversation because I have deposed Russ Brantman on that subject a number of times, that Russ Brantman told you that he sometimes uses the average G method that Geoff Mahon used?

A. Where the application, as an example pole test to a barrier test where the application and the data available, you get a little more accurate number, yes.

. . .

Q. And Russ Brantman has told you that is some air bag cases he has used essentially the same average G method of comparing the real world crashes as they have been reconstructed in litigation to 8 or 14 mile per hour barrier crashes; is that correct?

A. My understanding from talking to Dr. Brantman was that when you have a vehicle that goes from T to zero velocity as I was saying earlier as a pole test that you can use that method to compare it to an 8 mile an hour crash test.
But he said that when you are using a vehicle to vehicle type test like our crash test was, that you can still apply the system but you are going to make estimates and those estimates are going to make the number less accurate.

. . .

Q. So regarding Mr. Mahon's use of average G's to compare the Elliott, the various Elliott reconstructions to the 8 mile per hour barrier crash, do you have an opinion that Geoff Mahon is using an incorrect methodology?

A. I believe he is making an estimate and I believe that because of the type of test that it is that that estimate is an estimate, quote, unquote an estimate. I think if you have a pole to barrier test comparison, you have got a more accurate or I should say a better fit as far as the comparisons go. And again, talking or reading Dave

> Bauch's deposition, I understand what their method is,
> and I don't see any problem with that.
> But as I said to sum it up, I think there is nothing wrong with
> I would call it the mathematics that Mr. Mahon used. It is
> just that he is making some assumptions or he is taking
> some like duration time that can vary an amount and he is
> applying it so it is an estimator.

See Deposition Transcript of G. Corwin, pp. 11:8-14:22 and 22:11-23:2, attached as Exhibit A. Mr. Corwin did not testify that Mahon's method is a "correct", or a "good method of comparing severity of crashes", or an "appropriate method." Plaintiff simply misstates Mr. Corwin's testimony. While it may be a way to "estimate", Mr. Corwin actually testified that Ford used other ways that more accurately calculates the crash severity to determine whether to fire an airbag than use "average g's." Exhibit A, p. 12:13-25 Moreover, plaintiff cites to pages that do not say that Mr. Corwin "agrees that Mr. Mahon's analysis of how Ford compares its own 17 mph pole impact crashes and its 22 mph angles barrier crashes to its 14 mph flat barrier crashes is correct." See Plaintiff's Supplement Response, p. 3:14-16. On more that one occasion, Mr. Corwin testified he does not remember the exact numbers and at no time did he testify that he agrees that Mr. Mahon's methodology is correct. Exhibit A, pp. 20:12-21:16. Plaintiff's misquotes and misrepresentations to the Court should not be tolerated by this Court and this attempt does not shore up the missing links in the logic in Mahon's opinions.

Mr. Mahon has not established a logical link between the math formula and proof that the existence of the dwell enhancer caused the airbag to deploy in this crash when it allegedly should not have deployed. Indeed, Mr. Mahon's unreliable opinions fail to meet the Daubert challenge.

Mr. Corwin never testified that there were available alternative designs that could be used in 1996 Ford vehicles that would not deploy airbags in crashes with severities that are equal to or less than 8 mph barrier crashes. Rather, Mr. Corwin testified that

C:\Documents and Settings\kbrubake\Local Settings\Temp\tmp398\PHX-#311122-v1-ELLIOTT__Ford's_resp_to_Pf's_Motion_for_Leave_to_file_Suppl_to_Pf's_resp_to_Ford's_Motion_to_Exclud.TMP

6

the airbag system in the 1996 Ford Contour is not defective, that the dwell enhancer is designed to improve reliability of the airbag system and is not defective, and that the dwell enhancer has nothing to do with the deployment of the airbag in this crash. Mr. Corwin, relying on the accident reconstruction and the crash testing done for this case, testified that this crash was in the gray zone so deployment of the airbag in Ms. Elliott's crash was appropriate. Nothing about Mr. Corwin's deposition testimony supports plaintiff's statement that Mr. Corwin "agrees with Mr. Mahon that there are alternative systems that could be used in the 1996 Ford vehicles that will not deploy airbags in crashes with severities equal to or less severe than 8mph barrier crashes." Indeed, plaintiff's expert, Mr. Mahon, has not disclosed any reliable expert opinion that an alternative design would have or should have been installed in this vehicle. This is just mud on the wall tactics to distract the Court from the real issue—Mr. Mahon has no reliable opinion about the alleged defect—a dwell enhancer. Plaintiff has no reliable scientific proof or evidence that this alleged defect is accepted or acknowledged by anyone, not even the federal government agency charged with overseeing vehicle safety standards.

Plaintiff's use of Dr. Russell Brantman's deposition or report in other cases is irrelevant and should be stricken as hearsay. Neither side designated Dr. Brantman as a witness so his views from some other case, which have been taken out of context by plaintiff, are irrelevant and should be ignored. Plaintiff cannot shore up the reliability of his opinions from a hearsay report taken out of context by a person who is not a witness here.

Additionally, although plaintiff's counsel spends most of this supplemental brief discussing crashes that are below Ford's specifications for deploying an airbag, both sides' experts agree that there is no manufacturing defect in Ms. Elliott's airbag and that her airbag system met Ford's specifications. Accordingly, since both sides agree that

the airbag met Ford's specifications, plaintiff's arguments about airbag deployments at crash severity levels below specification are not relevant.

### III. MR. NRANIAN DOES NOT SUPPORT PLAINTIFF'S CLAIM OF DEFECT

Mr. Nranian does not prove that a dwell enhancer is a defect or causes airbags to deploy when they should not. Again, plaintiff has misstated Mr. Nranian's testimony. Mr. Nranian never testified that SDM sensors that have a dwell enhancing feature deployed airbags in deer hit testing at below threshold events. He testified that he could not remember whether or not the General Motors ("GM") airbags that deployed in deer hit testing had the auxiliary discriminating senses, the SDMs <u>or</u> the ball and cylinder systems. <u>See</u> Nranian Deposition, attached as Exhibit C to plaintiff's supplemental brief, p. 12. The GM ball and cylinder (otherwise known as the ball and tube) did not have the dwell enhancing feature and he did <u>not know whether or not those types of sensors</u> deployed in deer impact testing. <u>Id.</u> at p. 5, 11-12. Not knowing the answer to the question is not testimony that the airbag sensors that used a ball and tube never deployed in deer impact testing. Again, plaintiff's failure to quote the deposition fairly and honestly should not be tolerated by this Court.

Mr. Nranian's testimony does not prove that GM degraded its system when it used a dwelling enhancing feature. In fact, GM followed Ford in the use of a dwell enhancing feature when it went from the ball and tube to the SDM, which proves that the industry and scientific community think that a dwell enhancing system is a good feature and not a defect.

Moreover, Mr. Nranian testified about why deer impact testing was <u>not</u> done on all GM vehicles and why it has limited value as just one data point. <u>Id.</u> at p. 11. He testified that GM did <u>not</u> require its airbags to be immune from deploying an airbag in the deer impact testing. <u>Id.</u> Mr. Nranian <u>disputes</u> Mr. Mahon's testimony that GM requires the airbags to avoid deployment in deer impacts. Mr. Mahon never worked for GM. Mr. Nranian did. Mr. Nranian testified that airbag systems went into product at

C:\Documents and Settings\kbrubake\Local Settings\Temp\tmp398\PHX-#311122-v1-ELLIOTT__Ford's_resp_to_Pf's_Motion_for_Leave_to_file_Suppl_to_Pf's_resp_to_Ford's_Motion_to_Exclud.TMP

8

GM, even if they deployed during deer impact testing. Id. Mr. Nranian's testimony does not preclude summary judgment for Ford here.

## V. PLAINTIFF'S ALTERNATIVE DESIGNS AND DEFECT THEORIES ARE NOT ADMISSIBLE BECAUSE THEY ARE UNTIMELY DISCLOSED AND CONTRARY TO PRIOR SWORN TESTIMONY

Mr. Mahon opined in his report and sworn testimony that the only defect in this matter is the addition of the dwell enhancer allowed for a deployment in a crash severity below the 8 mile an hour threshold. Plaintiff's new and untimely alternative arguments should be stricken because they are untimely disclosed in response to Ford's Daubert challenge and well after the rebuttal deadline of August 5, 2006. Moreover, plaintiff has not moved this Court to extend the rebuttal deadline. For this reason, this Court should not consider plaintiff's new and untimely alternative designs and defect theories. Of significance is the fact that Mr. Mahon has not opined that this airbag system is defective and unreasonably dangerous because it lacks a dual stage or dual threshold airbag, that Ford should have used different firing thresholds, or that Ford should have adopted the thresholds used in the Australian vehicle. These are all last minute hopes and pleas by plaintiff's counsel to save his case from summary judgment and not evidence.

Even if this Court considered plaintiff's untimely alternative designs and defect theories, these theories cannot be used to avoid a Daubert challenge because they contradict Mr. Mahon's prior sworn testimony and report. Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266-67 (9th Cir. 1991) (A party cannot create a material issue of fact on a motion for summary judgment by offering an affidavit that contradicts the affiant's prior testimony); Foster v. Arcata Assoc., Inc., 772 F.2d 1453, 1462 (9th Cir. 1985)(Appellant cannot "create his own issue of fact by an affidavit contradicting his prior deposition testimony".). Plaintiff's new alternative designs and defect theories are an attempt to overcome Ford's motion to exclude Mr. Mahon because his only opinion

of defect does not meet the Daubert challenge. For this reason also, these new theories are not admissible.

Plaintiff's counsel now contends that Ford should have used a different threshold for deploying an airbag. See p. 6 of plaintiff's supplemental response. Plaintiff now contends that the Australian specifications should have been used since the thresholds are higher than Ford's. However, Mr. Mahon has already opined under oath that he is not critical of the fire and no fire threshold specifications. See Deposition of Mr. Mahon, attached to Ford's Motion to Strike Portions of Plaintiff's Statement of Fact in Response to Ford's Motion for Summary Judgment, Exhibit B, p. 148. Moreover, Ford had to comply with U.S. federal regulations in effect at that time—the Australian vehicle does not. Ford's witnesses do not support the notion that these new claims of defect—dual stage and/or dual threshold airbag systems were feasible, legal, or would have made a difference in this accident.

Ford's experts do not show that Ford consciously avoided development of dual stage and dual threshold airbag systems until the 2000 Ford Taurus. Indeed, Ford was the first company in the world to come out with a successful dual threshold system, which was installed in the 2000 Ford Taurus. See Deposition Transcript of David Bauch, p. 97:19-23, attached as Exhibit B. The technology was not available to do it successfully earlier. Id. at p. 97, 278-279. Indeed, although the Bosch company developed a system that it hoped would achieve that goal, which was installed in some Mercedes Benz and BMW vehicles, Bosch admitted that the field data proved that it was unsuccessful. Exhibit B, pp. 278:9-279:12. Dual threshold and dual stage airbags were not feasible for the 1996 Ford Contour. Accordingly, this newly invented theory unsupported by even plaintiff's expert, Mr. Mahon, does not avoid summary judgment here.

Plaintiff's reliance on Mr. Corwin's testimony is misplaced too. Contrary to plaintiff's statement, Mr. Corwin did not admit that "Ford . . . cancelled a 1974 dual

stage airbag program and then failed to respond to a 1984 NHTSA suggestion to use dual stage airbags to avoid or mitigate out of position airbag inflation induced injuries." See Plaintiff's Supplement Response, p. 5:13-16. Rather, the following is Mr. Corwin's testimony:

> Q. Budgets at Ford for 1974 would have been being adjusted in 1971, 1972, and 1973, correct, somewhere in that period?
>
> A. Well, under normal circumstances I would agree, but in 1974 we had the oil embargo and if you will remember, and maybe you don't because you are too young, but all of the car companies were basically hurting badly. And, in fact, I was temporary laid off for about five months in 1972 to the beginning of 1975. So in that time frame seeing something that says we are going to cancel. Some programs is not surprising. That was bad times for the car companies.
> . . .
> Q. Can you unequivocally say it was written either before or during calendar year 1974?
>
> A. No. I have got no date on this. I mean, they are already talking about –this letter is saying they can't meet –maybe I am misinterpreting this but, no, I can't. I don't have a date on this letter. I mean, I just can't.
> . . .
> Q. Now, at section III, page 10, are you familiar with that section where NHTSA suggests that one means of dealing with inflation induced injuries, particularly I think related to children, is by using a dual stage air bag system?
>
> A. That's what the document says, yes.

Exhibit A, pp. 58:5-61:19. Moreover, without citation and support, plaintiff states that Mr. Corwin allegedly testified that he "does not have any reason to know that they [dual stage and dual threshold systems] were not feasible for the 1996 Contour." See

Plaintiff's Supplement Response, p. 5:24-26.  However, although GM had a dual stage airbag system in 1973-1976 time period, Mr. Corwin testified that:

> [t]his system, and again going back to the GM papers and the problems they had with it, I mean, you can convince something and you can test it and you can put it into a car and you can sell it but that doesn't mean that it was safe, effective and reliable.
>
> My point being when you look at the GM air bag system that was in this vehicle, they had problems with the sensing system.  They had problems with injuries.  The driver's side air bag, I don't believe was vented.  I think it was basically a balloon or a beach ball type thing and the column was basically the main energy absorbing system.
>
> General Motors carried over nothing, not one thing from this vehicle into their modern air bag system, and the reason is because of technology.  You know, you can look at this and say well, geeze, they had two-stage air bags way back then, but to do it safely, reliably and effectively, that didn't happen because of a number of technical glitches and things that had to be solved.

Exhibit A, pp. 94:9-95:1.  The GM 1970s airbag system was not safe and posed risks of injuries that prevented every company, including GM to stop production of that system.  Moreover, plaintiff's statement that Mr. Corwin "did not know of Ford or Chrysler even working on such system prior to the 1996 Contour" does not tell the full testimony.  Mr. Corwin testified that from 1984 to 1990 he was employed at Chrysler and does not know what Ford was working on.  Exhibit A, p. 63:12-19.  He also explained that, although he was not aware of Chrysler working on dual stage systems, an advanced group may have been looking into it.  Exhibit A, pp. 63:20-64:7.

Mr. Corwin did not "corroborate" Mahon's opinions that the airbag should not deploy in 8 mile an hour or less crash severity.  The "no deployment" threshold of 8 mph is not set by Mr. Mahon but rather by Ford and Mr. Mahon has no criticism of the threshold specifications. Ford's crash tests prove that this crash was in the "gray zone" of deployment and therefore there was proper airbag deployment in this crash.

C:\Documents and Settings\kbrubake\Local Settings\Temp\tmp398\PHX-#311122-v1-ELLIOTT__Ford's_resp_to_Pf's_Motion_for_Leave_to_file_Suppl_to_Pf's_resp_to_Ford's_Motion_to_Exclud.TMP

12

This case is not about mathematical calculations and formulas, not about average g's, not about deer crashes, and not about new alternative designs or defect theories. Rather, the issue before the Court is whether there is scientific and reliable proof that supports Mr. Mahon's opinion that the addition of the dwell enhancer renders the airbag system defective and unreasonably dangerous and whether it had anything to do with the airbag deployment in this case. Plaintiff fails to prove with reliable and scientific evidence, that the dwell enhancer is defective and fails to prove the causal connection between the existence of the dwell enhancer in the airbag system and the deployment of the airbag in this crash.[1] If the dwell enhancer is a design defect, it would fire airbags in every below threshold crash. The crash tests that Ford ran in this case did not deploy the airbag and plaintiff contends both of the crash tests were below the threshold for firing the airbag.[2] Accordingly, the only testing that was done in this case proves that the dwell enhancer does not cause unwanted airbag deployments and plaintiff has no testing and has not produced reliable evidence to the contrary. Without reliable and scientific evidence, Mr. Mahon's opinions do not pass the <u>Daubert</u> requirements. Accordingly, Mr. Mahon should be excluded from giving opinions in this matter.

DATED this 13th day of October, 2006.

                                                     BOWMAN AND BROOKE LLP

                                                     By: s/ Iman R. Soliman
                                                          Barry C. Toone
                                                          Jill S. Goldsmith
                                                          Iman R. Soliman
                                                          Suite 1600, Phoenix Plaza
                                                          2901 North Central Avenue
                                                          Phoenix, Arizona 85012-2761
                                                          Attorneys for Defendant

---

[1] The dwell enhancer does not typically play a role in the deployment of an airbag in vehicle to vehicle crashes.

[2] Ford's experts have opined that the second crash test at an impact speed of 15 mph was in the "gray zone" for firing an airbag.

C:\Documents and Settings\kbrubake\Local Settings\Temp\tmp398\PHX-#311122-v1-ELLIOTT__Ford's_resp_to_Pf's_Motion_for_Leave_to_file_Suppl_to_Pf's_resp_to_Ford's_Motion_to_Exclud.TMP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C:\Documents and Settings\kbrubake\Local Settings\Temp\tmp398\PHX-#311122-v1-ELLIOTT__Ford's_resp_to_Pf's_Motion_for_Leave_to_file_Suppl_to_Pf's_resp_to_Ford's_Motion_to_Exclud.TMP

14

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of October, 2006 I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

>G. Lynn Shumway
>Law Offices of G. Lynn Shumway
>6909 E. Greenway, Ste. 200
>Scottsdale, Arizona 85254
>Attorneys for Plaintiff

                                                    s/ Kelly Brubaker

C:\Documents and Settings\kbrubake\Local Settings\Temp\tmp398\PHX-#311122-v1-ELLIOTT__Ford's_resp_to_Pf's_Motion_for_Leave_to_file_Suppl_to_Pf's_resp_to_Ford's_Motion_to_Exclud.TMP

15