1  G. Lynn Shumway (011714)
   **LAW OFFICE OF G. LYNN SHUMWAY**
2  6909 E. Greenway Parkway
   Suite 200
3  Scottsdale, Arizona  85254
   Telephone :  (480) 368-0002
4  Facsimile  :  (480) 315-8044

5
   *Attorney for Plaintiff*
6

7  # In the United States District Court

8  ## IN AND FOR THE DISTRICT OF ARIZONA

9  ★★★★★

10  **Karen Elliott**, an individual ,

11        Plaintiffs,                              No. CV 04-00902 PHX SRB

12     vs.

13  **Ford Motor Company**, a Delaware       **PLAINTIFF'S RESPONSE TO**
    corporation; **TRW Automotive Holdings**  **FORD'S MOTION TO STRIKE**
14  **Corp.**, a Delaware corporation; **TRW**  **PORTIONS OF PLAINTIFF'S**
    **Vehicle Safety Systems, Inc.**, a Delaware  **STATEMENT OF FACTS**
15  corporation; and **Autoliv ASP, Inc**., an
    Indiana corporation.
16                                             (Assigned to the Honorable
        Defendants.                             Susan R. Bolton)
17

18        Plaintiff, by and through undersigned counsel, hereby responds to Ford's Motion to

19  Strike Portions of Plaintiff's Statement of Facts.  Plaintiff requests that Ford's Motion to

20  Strike be denied because Plaintiff's supplemental expert disclosures are not late, or if the

21  Court finds that they are late the circumstances make the timing of the Plaintiff's

22  disclosure of supplemental expert testimony reasonable and non-prejudicial to Ford.

23  Further, other exhibits are admissible for the reasons stated below.

24        On September 16, 2005, the Court set a discovery schedule that required all experts

25  and their expected testimony be disclosed on or before June 28, 2006.  In fact, June 28,

26  2006 was the cut off for disclosure of all exhibits and disclosure of witness testimony, but

27

28

LAW OFFICE OF G. LYNN SHUMWAY
6909 E. Greenway, Suite 200
Scottsdale, Arizona 85254
Telephone: (480) 368-0002 ♦ FAX: (480) 315-8044

LAW OFFICE OF G. LYNN SHUMWAY
6909 E. Greenway, Suite 200
Scottsdale, Arizona 85254
Telephone: (480) 368-0002 ◆ FAX: (480) 315-8044

without time for expert depositions.  Expert depositions appear, from that order, to be ordered not to be taken prior to that June 28, 2006.

On April 28, 2006, after Plaintiff's expert reports were disclosed to Ford, undersigned stipulated with Ford lawyers to a change in the date Ford expert reports were due from May 2006 to July 5, 2006.  Ford took Plaintiff's expert depositions in May and June, 2006.  On July 5th, Ford disclosed its expert reports, accompanied by crash testing that was performed the last few days of June 2006 at Exponent.

Based on the order of the disclosure of Plaintiff's expert reports and Plaintiff's experts being deposed prior to Ford's experts providing reports, undersigned counsel believed in July and early August 2006 that Plaintiff's expert reports would properly be supplemented after Ford experts were deposed, following the sequencing of Plaintiff reports and depositions being provided prior to Ford's expert reports being provided.[1] Undersigned sought Ford expert deposition dates for July, but was told none were available until significantly later.  The August 5, 2006 date, when "Rebuttal experts, if any, shall be disclosed…", registered to undersigned as a date to list new Rebuttal experts, not previously named, without striking undersigned that it might be a date when Plaintiff's original expert's opinions must be supplemented.   In fact, under the September 2005 scheduling order, the last date for disclosure of exhibits and supplementing disclosure of experts was June 28, 2006.  The corresponding date for finishing all disclosure under the new April 2006 schedule was September 26, 2006.   All of Plaintiff's supplemental expert reports were supplied by September 26, 2006.

Ford's position that Plaintiff's expert disclosure is untimely is also wrong since Ford's experts have disclosed information and exhibits at their depositions, all following

---

[1] This order of Plaintiff producing expert reports and experts for depositions prior to Ford expert reports being due is the court ordered sequence in *Cook v. Ford*, a case with many parallels to *Elliott v. Ford*, including Dr. Carter and Jeff Pearson, Ford experts in both cases.  Dr. Carter was deposed in Cook v. Ford only a few weeks before being deposed in this case.  Ford Expert Jeff Pearson has had his deposition in both cases continued at Fords request, twice in one of the cases.

LAW OFFICE OF G. LYNN SHUMWAY
6909 E. Greenway, Suite 200
Scottsdale, Arizona 85254
Telephone: (480) 368-0002 ◆ FAX: (480) 315-8044

the August 17, 2006 Affidavit of Mr. Mahon that is attached to Plaintiff's Response to the Ford Daubert motion, that were not previously disclosed.  Rule 26 anticipates continuing disclosure as new information is encountered by experts.  The most significant of those was Dr. Carter, Ford's accident reconstructionist.  At the deposition, Dr. Carter disclosed extensive file materials that had not been disclosed earlier, including excel spread sheets showing Dr. Carter's method of comparing Ford's litigation testing to 8 and 14 mph 1996 Contour barrier crash tests.  Copies of those excel spread sheets, Dr. Carter's never before disclosed crush measurements and his mathematical calculations and analysis are attached hereto as **Exhibit 1**.

**MR. MAHON'S AFFIDAVITS DO NOT CONTRADICT
HIS EARLIER TESTIMONY**

Where an affidavit explains prior testimony that might have been confused, an affidavit that an adversary labels inconsistent is not inadmissible for summary judgment purposes.  Ford cites to *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991) for the proposition that "A party cannot create a material issue of fact on a motion for summary judgment by offering an affidavit that contradicts the affiant's prior testimony."  *Id*.  However, *Kennedy* in fact supports the court's consideration of Mr. Mahon's affidavits.  At Mr. Mahon's deposition there was no evidence in the record that the Delta V of the crash was any higher than 5 miles per hour.  By the time of his affidavit there was evidence from Dr. Carter that the Delta V was as high as 13.1 miles per hour. That change would lead any sensor engineer to evaluate the new evidence using standard methodology, just as Mr. Mahon did in his affidavit.

*Kennedy*, discussing this kind of a circumstance said:

> "In *Camfield Tires v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir.1983), the Eighth Circuit found that the Fifth Circuit's decision in *Bone* and the Ninth Circuit's decision in *Radobenko* did not conflict, but reflected different facts. In *Radobenko,* the district court believed that the affidavit was a sham produced merely to avoid summary judgment. In *Bone*, however, the

LAW OFFICE OF G. LYNN SHUMWAY
6909 E. Greenway, Suite 200
Scottsdale, Arizona 85254
Telephone: (480) 368-0002 ♦ FAX:   (480) 315-8044

affidavit was an attempt to explain certain aspects of the confused deposition testimony and therefore was not really inconsistent. *Camfield*, 719 F.2d at 1365."

These thoughts have been echoed by the Seventh and Tenth Circuits. In *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir.1985), the court held that "[a]n inconsistent affidavit may preclude summary judgment ⋯ if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony or if the affiant lacked access to material facts and the affidavit sets forth the newly-discovered evidence." See also *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir.1986) (same)."

Even the Mahon deposition quotes in Ford's motions show that he was limiting his testimony to the set of facts that he believed existed at the time of his deposition. Additionally, Mr. Mahon pointed out at his deposition that if the further inspections by Ford revealed that the crash was different than he believed it to be, or Ford's experts testified at deposition to something he needed to address, he reserved the right to modify his opinions.  That transcript reads as follows:

```
11      Q      Have you completed your
12 assignments in this case?
13      A      Subject to a number of things which
14 are going to happen after this deposition,
15 namely the removal of the bumper facia which
16 I understand will occur in a few days and
17 depositions of defendant's experts which may
18 provide information that I might need to
19 comment on, with those exceptions which are
20 rather substantial or possible nonissues, I
21 would say that I have completed the original
22 part of the assignment.  Obviously, I have to
23 give this deposition and testify at trial.
24      Q      Sure.  Have you ever asked
25 Mr. Shumway to remove the bumper facia of
1 Ms. Elliott's car?
2      A      I did not.
3      Q      Mr. Shumway provided to us
4 your report in this case which is dated
5 April 13, 2006.  Do you have it in front of
6 you?
7      A      I do.
8      Q      Does the report contain your
9 final opinions in this case?
10      A      Subject to information that may
11 arise from subsequent events, the answer is
12 yes.
```

4

LAW OFFICE OF G. LYNN SHUMWAY
6909 E. Greenway, Suite 200
Scottsdale, Arizona 85254
Telephone: (480) 368-0002 ◆ FAX: (480) 315-8044

See **Exhibit 2**, Mahon deposition page 10 line 11 – page 11 line 12.  Mr. Mahon's expectation that different evidence or new material from Ford experts might lead him to modify his testimony is not unusual and to testify that he would not modify his opinions based on new evidence or new opinions offered by opposing experts, if justified, would be wrong.

Ford's argument that the responding Statement of Facts paragraphs 32 and 35 should be struck are misplaced.  Late deployments are a clear and present danger in airbag deployments and the combination of Mahon, Corwin and Scott's reports and affidavits show that it is likely that Karen Elliott was the victim of a late deployment.  Dr. Scott opinion puts Ms. Elliott in a position looking forward of and to her left around the driver side A-pillar, pulling herself up over the steering wheel.  The other experts have opined that Ms. Elliott was braking at the point of impact.  Those two actions are inconsistent with each other and a jury would be very justified in concluding that Ms. Elliott was in the dangerous position that skinned her face, fractured her nose and eye socket and threw her into the left B-pillar as a result of one of the late deployments that Mr. Corwin and Mr. Mahon have warned about in their reports and affidavits.  See Plaintiff's SOF paragraphs 32 and 35 and **Exhibit 3**, photographs of Plaintiff's facial, head, chest and arm injuries that show her position close to the airbag, even though she was belted.

### AVERAGE Gs CALCULATIONS WERE UNNECESSARY FOR A 5 MPH DELTA V, BUT NECESSARY TO COMPARE 13.1 MPH DELTA V TO THE FORD NO FIRE CRASHES

Mr. Mahon's use of Average Gs in evaluating the Dr. Carter Delta Vs is not inconsistent with not having to use an average G calculation to conclude that a 5 mph Delta V car to car crash is less severe than an 8 mph crash into a barrier.  Mr. Mahon's

disclosure of this opinion was not untimely, but if it was  it was not prejudicial to Ford since Dr. Carter and Mr. Corwin have both addressed the average g calculation and method in their depositions.  See Exhibit 1 and Mr. Corwin's testimony in Plaintiffs motion for leave to supplement her response to Ford's *Daubert* motion.

**MR. SHEPSTON HAS NOW SEEN CRASH TESTING
AND MODIFYING HIS OPINIONS IS REASONABLE
UNDER THIS CIRCUMSTANCE**

Mr. Shepston's supplementing his opinions in his September 12, 2006 affidavit is reasonable and followed closely the deposition of Dr. Carter.  Dr. Carter's deposition led to new information about how Dr. Carter measured the damage to the Exponent crash test Contour and his method and calculations use in reaching his opinions.   That in combination with being ahead of the September 26, 2006 disclosure deadline makes Mr. Shepston's opinion disclosure timing reasonable.  In fact, Plaintiff's experts have still not seen two depositions of Ford's experts.  That delay is purely the result of Ford's requests for delays in previously scheduled depositions of Dr. Scott and Jeff Pearson for Ford scheduling purposes.

Ford argues that Mr. Shepston had seen the bumper off at his deposition, however, Mr. Shepston then did not have the Exponent crash test reports, videos, or Dr. Carters computations and opinions about his reconstruction.

**FORD'S DWELL ENHANCER ELIMINATES SENSORS AND SAVES $18**

The document referenced in Plaintiff's SOF paragraphs 29 and 30 should be considered as they are Ford documents produced by Ford with Ford's bates label on its pages and are statements by a party opponent under FRE 801(d)(2).  This kind of document is self authenticating by its characteristics and document that Ford lawyers

**LAW OFFICE OF G. LYNN SHUMWAY**
6909 E. Greenway, Suite 200
Scottsdale, Arizona 85254
Telephone: (480) 368-0002 ♦ FAX: (480) 315-8044

should admit to being authentic if asked about that subject by the court. FRE 901(b)(4). The content of this Ford produced document makes it clear that it can not be from any other source than Ford, as does the "produced by Ford" stamp.

Ford's argument that the Brantman Report from *Gaudio v. Ford* is inadmissible hearsay is wrong.  First, the report is not being offered to prove the truth of the matter asserted in the document, but rather, it is offered to show that experts hired by and paid for by Ford use comparisons of the severities of softer crashes to "no fire" or "must fire" crashes to evaluate whether the airbag sensing system should command a deployment in a crash with the parameters opined to by expert accident reconstructionists in litigation. Because the purpose in citing to the document is not to prove the truth of what Dr. Brantman was saying in the document, the document is not hearsay.  FRE 801(c).  Second, Dr. Brantman made the statements in Plaintiff's SOF exhibit 14 when he was acting as the agent of Ford Motor Company as an expert in litigation and so the statements in that document are admissions of a party opponent, not hearsay, and thus admissible.   FRE 801(d)(2)(A-D) and 901(b)(4).

### UNSIGNED MAHON AFFIDAVIT

Undersigned counsel first looked at the Ford Motion to Strike Portions of Plaintiff's Statement of Facts on October 14, 2006. Otherwise this motion would have been filed earlier. Undersigned left his office on September 12, 2006, the day of filing Plaintiffs Responding Statement of Facts with an understanding that a notarized version of Mr. Mahon's affidavit was going to be received at his office and electronically filed with the Statement of Facts the morning of September 13, 2006.   Based on a conversation with Mr. Mahon on October 15, 2006,  Mr. Mahon believes that he faxed and then mailed the signed and notarized affidavit to undersigned's office on September 13, 2006.    Obviously,

LAW OFFICE OF G. LYNN SHUMWAY
6909 E. Greenway, Suite 200
Scottsdale, Arizona 85254
Telephone: (480) 368-0002 ◆ FAX:   (480) 315-8044

1    undersigned, his office, or less likely the post office, fumbled the September 13, 2006

2    affidavit of Mr. Mahon.   Of course, undersigned is responsible for the content of the

3    Responding Statement of Facts and if the notarized affidavit was not received is

4    responsible to follow up and get that finalized affidavit.   Plaintiff requests leave of the

5    court to file the substitute affidavit of Mr. Mahon that is signed and notarized to replace

6    the unnotarized affidavit that is exhibit 2 to Plaintiff's responding statement of facts.   That

7    notarized affidavit is attached hereto as **Exhibit 4**.

8            Allowing substitution of an unmodified version of the September 12, 2006 affidavit

9    of Mr. Mahon will not be prejudicial to Ford and will contribute to allowing justice to be

10   done by having the affidavit's content considered by the court relating to Ford's motion for

11   summary Judgment.[2]   Rule 56(e) allows courts to permit affidavits to be supplemented or

12   allow further affidavits.   <u>See</u> Rule 56(e), Federal Rules of Civil Procedure.   That rule reads

13   in part, "The court may permit affidavits to be supplemented or opposed by depositions,

14   answers to interrogatories, or further affidavits."   *Id*.    The rule clearly permits the court to

15   grant Plaintiffs leave to file the notarized affidavit.

16

17           Rule 26 contemplates continuing supplementation of expert reports when expert

18   opinions need to be modified to accurately reflect the expert's new or modified opinions.

19   See Rule 26(e)(1).    Expert reports are required to be supplemented.   In this case any

20   untimeliness is not prejudicial and the affidavits of Mr. Mahon and Mr. Shepston should be

21   considered by the court in deciding the pending Ford motion for summary judgment.

22                                            **CONCLUSION**

23           For all of the reasons stated above the court should consider all of the evidence in

24   the Plaintiff's responding statement of facts and deny in whole or in substantial part the

25

26   Ford motion to strike portions of Plaintiff's statement of facts.

27   _____

28   [2] There is more than enough evidence in the record, without the September 12, 2006 affidavit, upon which a
     reasonable jury could find in favor of Plaintiff.

1    RESPECTFULLY SUBMITTED this 16th day of October, 2006.

2                                          **LAW OFFICE OF G. LYNN SHUMWAY**

3

4

5                                          _____s/ G. Lynn Shumway_____
                                           G. Lynn Shumway
6                                          6909 E. Greenway Parkway
                                           Suite 200
7                                          Scottsdale, Arizona  85254
                                           *Attorney for Plaintiff*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LAW OFFICE OF G. LYNN SHUMWAY**
6909 E. Greenway, Suite 200
Scottsdale, Arizona 85254
Telephone: (480) 368-0002 ♦ FAX:   (480) 315-8044